UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHARLES T. RAINS,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:15-cv-00411

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" for the closed period of January 10, 2005 through April 26, 2010, and therefore unentitled to Disability Insurance Benefits ("DIB") during that closed period. This case is before the Court upon Plaintiff's Statement of Errors (doc. 6), the Commissioner's memorandum in opposition (doc. 7), Plaintiff's reply (doc. 9), the administrative record (doc. 5), and the record as a whole.[2]

I.

A.    **Procedural History**

Plaintiff filed an application for DIB asserting disability as of January 10, 2005 as a result of a number of impairments including, *inter alia*, osteoarthritis in the right, dominant wrist with

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

residuals of surgery, and degenerative changes in the lumbar spine (a bulging disc and facet arthropathy). PageID 43.

On February 12, 2010, Plaintiff had a hearing before ALJ Amelia Lombardo. PageID 117, 130-31. On August 17, 2010, the ALJ issued a decision finding Plaintiff disabled by application of the Medical Vocational Guidelines ("Grid")[3] after he reached the age of 55 on April 27, 2010,[4] but not disabled before that date. PageID 121. Plaintiff subsequently appealed that decision. *See* PageID 130. On review, the Appeals Council vacated ALJ Lombardo's decision with respect "to the issue of disability for the period prior to April 27, 2010," and remanded the case to the ALJ for further proceedings. PageID 130-31.

On remand, Plaintiff received a second hearing before ALJ Lombardo on February 12, 2014. PageID 84. The ALJ issued a written decision on May 27, 2014, again finding Plaintiff (1) not disabled from January 10, 2005 through April 26, 2010, but (2) disabled from that latter date and thereafter. PageID 61-77. Specifically, the ALJ's findings were as follows:

---

[3] The ALJ considers the Grid "in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a listed impairment but is nevertheless incapable of performing past relevant work." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). The Grid sets forth the vocational factors of age, education, work experience, and maximum sustained work capability. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200.00(a). A plaintiff's "maximum sustained work capability" is categorized as one of five "exertional levels" and is defined as "[t]he highest functional level a person can perform on a regular work basis[.]" SSR 83-10, 1983 WL 31251, at *6.

[4] Persons aged 55 or older are considered "of advanced age" under the Commissioner's regulations. *See* 20 C.F.R. § 404.1563(3). The Social Security Administration "consider[s] that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work." *Id*. Under the Grid, a "person of advanced age" is disabled if, in addition to other findings applicable here, the person is, at the most, capable of "light work." 20 C.F.R. Part 404, Subpart P, Appendix 2 Rule 202.06. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). An individual who can perform light work is presumed to also be able to perform sedentary work. *Id*. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since January 10, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*).

3. The claimant has the following severe impairments: osteoarthritis in the right, dominant wrist with residuals of surgery; and degenerative changes in the lumbar spine (a bulging disc and facet arthropathy) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. Residual functional capacity ["RFC"]. After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform a light range of work except: lifting is limited to no more than 10 pounds; fingering and handling with the right, dominant hand is limited to occasionally.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1955. He was 49 at the alleged onset date. He attained age 50 for Social Security purposes on April 26, 2005 and was closely approaching advanced age. He attained age 55 for Social Security purposes as of April 26, 2010 and an individual of advanced age (20 CFR 404.1563).

8. The claimant has a high school education (he told the consulting examiner he completed the 10th grade but on his Disability Report he indicated he completed the 12th grade) and he can communicate in English (20 CFR 404.1564).

9. The claimant does not have transferable skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant could have performed prior to April 26, 2010 (20 CFR 404.1560(c), 404.1566).

11. Beginning on April 26, 2010, the date the claimant's age category changed, considering the claimant's age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).

12. The claimant was not disabled prior to April 26, 2010, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

PageID 43-50.

Thereafter, the Appeals Council denied review on September 15, 2015 making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 28. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal"). Plaintiff challenges just the ALJ's non-disability finding. Accordingly, the ALJ's determination -- that Plaintiff is disabled as of April 26, 2010 -- is not before the Court on appeal.

B. **Evidence of Record**

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 43-47. Plaintiff, in his Statement of Errors, also summarizes the evidence of record. Doc. 6 at PageID 511-17. The Commissioner, in response to Plaintiff's Statement of Errors, defers to the ALJ's recitation of the evidence, and presents no objection to Plaintiff's summary. Doc. 7 at PageID 530. Except as otherwise noted herein, the undersigned incorporates the summary of evidence as set forth by the ALJ and Plaintiff.

## II.

A. **Standard of Review**

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's

4

non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

B. **"Disability Defined"**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability

determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

    1.    Has the claimant engaged in substantial gainful activity?

    2.    Does the claimant suffer from one or more severe impairments?

    3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

    4.    Considering the claimant's RFC, can he or she perform his or her past relevant work?

    5.    Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## III.

In his Statement of Errors, Plaintiff argues that the ALJ erred by failing to properly: (1) weigh the medical source opinions -- including the opinions of treating orthopedic surgeon Peter S. Barre, M.D. and treating primary care physician Kent K. Scholl, M.D.; (2) apply Social Security Rulings 83-10 and 83-12 with respect to the Grid; (3) assess the testimony of the Vocational Expert ("VE"); and (4) make a Step Five determination supported by substantial evidence. Doc. 6 at PageID 517. Finding Plaintiff's first alleged error to be well taken, the undersigned does not address the merits of Plaintiff's remaining contentions, but would direct

6

that the ALJ reassess her findings on remand, including the weight accorded to all medical source opinions and application of the Grid.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id.*

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Treaters are entitled to greater deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[5]

---

[5] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Dr. Barre, Plaintiff's orthopedic surgeon, treated him from February 8, 2005 to February 18, 2008. PageID 469-78. When Dr. Barre first began treating Plaintiff, he observed swelling in Plaintiff's carpal area and noted positive Tinel's signs, decreased sensation, and palpable tenderness in Plaintiff's wrist. PageID 478-79. On March 14, 2005, Dr. Barre performed surgery on Plaintiff's right wrist. PageID 477. In post-surgical follow-ups, Dr. Barre noted that Plaintiff continued to experience significant pain, and an examination revealed tenderness and a limited range of right wrist motion. PageID 472-77. X-rays showed "a narrowing of the radiocarpal joint[.]" PageID 473.

8

After seeing no improvement in Plaintiff's wrist pain and movement by December 2006, Dr. Barre performed a second surgery on Plaintiff's right wrist.  PageID 417-18, 471.  Post-surgery, Plaintiff attended regular follow-up consultations with Dr. Barre through April 2008.  PageID 468-71.  In these follow-ups, Plaintiff continued to complain of pain and Dr. Barre continued to note tenderness and swelling, stating that "[u]nfortunately, I think this is a permanent problem of his upper extremity . . . that limits [Plaintiff's] ability to do any type of work."  PageID 468-70.  In fact, Dr. Barre concluded that the impairment to Plaintiff's right wrist would "make it impossible for him to maintain any type of gainful employment."  PageID 469.  The ALJ found that Dr. Barre's opinion was not entitled to "controlling weight" because:

> Dr. Barre . . . concluded that the claimant must have a chronic pain problem with the upper extremity, yet did not prescribe any pain medication other than around the surgical periods.  The claimant testified that he did not take any pain medication (and none is documented in the record since the last record with Dr. Scholl, the family doctor, in late 2008).  Dr. Barre had indicated that EMGs were negative.  Also, exams did not indicate any significant neurological deficits.  There was no explanation how someone in disabling pain could grip with the hand as much as 80 pounds as indicated in this record.  Also, in February 2008 Dr. Barre thought the claimant might have ulnar neuropathy but EMG shortly thereafter ruled this out and he so noted in April 2008.  He then said that the claimant should see a pain management specialist and then perhaps another surgery would be warranted.  Dr. Barre in the February 2008 commentary in his notes was apparently relying a great deal on claimant's allegations.  He did not adequately explain why the claimant would be totally unable to work.  He is not a vocational expert and there are jobs that the claimant can perform with substantial limitation of the right, dominant hand.  The final determination on the issue of disability is reserved to the Commissioner.  Deference is given to the extent of the residual functional capacity (which actually does render the claimant disabled for vocational reasons at age 55 in early 2010).

PageID 47 (citations omitted).

Insofar as the ALJ rejected Dr. Barre's opinion -- on the basis that the severity of the impairment is undermined by Dr. Barre's failure to prescribe medication at all times -- the

9

Commissioner concedes error in this regard. Doc. 7 at PageID 539. "The Commissioner acknowledges that Dr. Scholl prescribed . . . [pain] medication at Dr. Barre's request." *Id*. Accordingly, without dispute, this reason is an insufficient basis upon which to reduce the weight accorded to Dr. Barre's opinion.

With regard to the ALJ's reliance on purportedly "negative" EMG findings and Plaintiff's supposed lack of neurological deficits, the Court notes that EMG findings were not "negative." *See* PageID 465-66. In fact, Plaintiff's EMG findings were "[a]bnormal[.]" PageID 466. While the EMG findings may have revealed no evidence of ulnar neuropathy -- which Dr. Barre did initially suspect -- they otherwise revealed abnormal findings, including evidence of carpal tunnel syndrome. *Id*. With regard to the purported lack of "neurological deficits," Dr. Barre found, and orthopedist Mark Klug, M.D. confirmed in his consultative examination, that Plaintiff had a positive Tinel's sign at the ulnar nerve, which demonstrated a "neurological deficit" in Plaintiff's right wrist/fingers.[6] PageID 460, 478-79. Accordingly, the ALJ's findings in this regard are unsupported by substantial evidence.

Insofar as the ALJ found that treater Barre's opinion was inconsistent with Plaintiff's dynometer hand grip test conducted in January 2007, (*see* PageID 47), the ALJ inappropriatly substituted her own lay interpretation of medical data for that of the treating orthopedic surgeon. *See Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) (holding an ALJ "may not

---

[6] A Tinel's sign is defined as "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion of the beginning regeneration of the nerve. *Dorland's Illustrated Medical Dictionary* 1741 (31st ed. 2007). A positive Tinel sign "constitute[s] objective evidence and/or clinical findings of carpal tunnel syndrome." *Robinson v. Comm'r of Soc. Sec.*, 180 F. Supp. 3d 497, 505 (S.D. Ohio 2016) (citing *Fletcher v. Colvin*, No. 0:12-CV-02888-DCN, 2014 WL 1252913, at *8 (D.S.C. Mar. 26, 2014) (finding that "the ALJ's statement regarding a lack of objective clinical and physical findings' with regard to carpal tunnel syndrome was not supported by substantial evidence where the record revealed positive Phalen/Tinel findings); *Piatt v. Barnhart*, 225 F.Supp.2d 1278, 1285 (D. Kan. 2002) (finding error where 'the ALJ's finding ignored . . . clinical findings . . . for carpal tunnel' such as 'a positive Tinel's and positive Phalen's").

substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence"); *Simpson v. Comm. of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings")); *see also Martin v. Colvin*, No. 3:15-CV-131, 2016 WL 4764961, at *1 (S.D. Ohio Sept. 13, 2016).

With regard to the ALJ's conclusion that Dr. Barre's opinion improperly relied on Plaintiff's subjective allegations, such conclusion is belied by the record. PageID 47. The record is replete with clinical findings supporting Dr. Barre's opinion, including his own clinical observations noted *supra* (PageID 468-70) and those noted by consulting examiner Dr. Klug -- finding tenderness over Plaintiff's ulnar nerve, positive Tinel's sign, and an extremely limited range of motion in his wrist, PageID 460 -- whose assessment Dr. Barre read and relied upon. PageID 469. In fact, during the February 15, 2008 examination, after which Dr. Barre gave his opinion, he specifically noted: "swelling over the ulnar aspect of the wrist", "point tender[ness] to palpitation over the pisiform,"[7] "tenderness over the distal ulna"; and only "20 degrees of flexion and 20 degrees of extension [of the right wrist]."[8] *Id*.

In addition to the reasons advanced by the ALJ being unsupported by substantial evidence, the undersigned further finds that the ALJ's analysis of Dr. Barre's opinion fails to reflect consideration of the deferential weight factors found under 20 C.F.R. § 404.1527(c). *Blakley*, 581 F.3d at 406 (stating that when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate

---

[7] Pisiform is the pea-shaped bone of the wrist near the lower end of the Ulna. Dorland's Illustrated Medical Dictionary 1471 (31st ed. 2007).

[8] The average wrist flexion is a maximum of 70 degrees and the average wrist extension is a maximum of 70 degrees. *A Clinical Approach to Diagnosing Wrist Pain,* American Family Physician, http://www.aafp.org/afp/2005/1101/p1753.html (last visited on Jan. 10, 2017).

11

by considering a number of factors" set forth in 20 C.F.R. § 404.1527(c)). Specifically, Dr. Barre merited deference because he maintained a long-term treatment relationship with Plaintiff, gave an opinion consistent with those offered by treater Dr. Scholl[9] and examiner Dr. Klug, and is a specialist in orthopedic surgery. *See Matta v. Colvin*, 5:12-cv-2167, 2013 WL 454596, at *8 (Aug. 27, 2013).

### IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

Here, evidence of disability during the closed period at issue is not overwhelming and therefore, a remand for further proceedings is proper so that the ALJ can properly assess all opinion evidence of record anew in light of the foregoing findings.

---

[9] The undersigned also finds that the main reason relied upon by the ALJ in rejecting Dr. Scholl's opinion is unsupported by substantial evidence. The ALJ found that Dr. Scholl's opinion was not entitled to any weight because "[h]e did not provide any detailed findings and he was not a treating source for the wrist condition." PageID 47. However, a review of Dr. Scholl's records reveals specific findings of stiffness, tenderness, and a limited range of motion in Plaintiff's right wrist. PageID 485. Further, Dr. School referred Plaintiff to Dr. Barre (PageID 482) and was copied on all of Dr. Barre's treatment notes. PageID 468-79. Accordingly, the ALJ erred in weighing Dr. Scholl's opinion as well.

**V.**

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date:   February 6, 2017                                  s/ Michael J. Newman
                                                                                Michael J. Newman
                                                                                United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).